# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.  2:12-cr-00119-PMP-PAL |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ROBERT DAVID FORSYTH, ) | **Motion for Reconsideration of** |
| ) | **Pretrial Detention Order (#23)** |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant Robert Forsyth's Motion for Reconsideration of Pretrial Detention Order; Request for Release Pending Trial (#23), filed on July 17, 2012; and the Government's Opposition to Defendant's Motion for Reconsideration of Pretrial Detention (#26), filed on July 27, 2012.  Having reviewed the Defendant's motion and the Government's opposition, the Court finds that it is proper to decide this motion without further hearing and hereby issues its decision as follows:

## BACKGROUND

The Indictment (#1) in this case was filed on April 10, 2012.  It charges Defendant Robert Forsyth with income tax evasion and willful failure to file an income tax return in violation of 26 U.S.C. §7201 and §7203.  The indictment alleges that Defendant earned substantial income from the practice of medicine, expert witness fees, and Social Security benefits during the period between 1999 and 2008.  Defendant allegedly did not file income tax returns during those years and evaded the payment of a large part of the taxes that were due and owing by him.  Defendant allegedly elected to be treated as an independent contractor by the medical clinic that employed him so that taxes were not withheld from his paychecks.  The Indictment alleges that Defendant engaged in a variety of acts to cash his pay checks and Social Security checks and to pay his

personal debts, that avoided depositing his income into bank accounts where it could be traced and made subject to levy and seizure by the IRS.  The Indictment also alleges that during the years that Defendant failed to pay taxes, he purchased airline tickets to various destinations including Cancun, Mexico, San Jose, Costa Rica, Vancouver, British Columbia and Bangkok, Thailand; paid for hotel accommodations in Costa Rica and Thailand; purchased high end jewelry items; and spent money on gambling.

The Defendant's initial appearance and arraignment and plea on the indictment occurred on June 18, 2012.  The Government moved for Defendant's pretrial detention as a risk of nonappearance.  The Court found that Defendant poses a substantial risk of nonappearance and that there is no condition or combination of conditions that could be fashioned to reasonably assure his future appearance.  The Court therefore ordered that he be detained pending trial.

During the June 18th detention hearing, the Government proffered the same information in support of Defendant's detention that it again sets forth in its opposition to Defendant's motion for reconsideration.  According to the Government, IRS agents informed the Defendant in April 2008 that he was under criminal investigation. The Government contends that shortly after receiving that information, Defendant, who is a Canadian citizen, fled to Canada.  Defendant allegedly told his daughter that he was in trouble and had to leave.  He allegedly told a long time friend that he had never paid income taxes, that he was in trouble and had to leave town because the IRS was going to get him.  From Canada, Defendant also allegedly contacted his employer and informed them that he would not be returning to work. *Opposition (#26), pg. 3.*

Defendant, however, returned to the United States approximately one month later and, according to the Government, appeared to be committed to resolving his tax issues.  This led to two rounds of pre-indictment plea negotiations which were unsuccessful.  The Government states that its counsel notified Defendant's counsel on February 2, 2012 that given that the matter could not be resolved pre-indictment, the Government would seek an indictment.  The Government alleges that within days of breaking off plea negotiations, Defendant contacted his employer and stated that he needed to travel to Canada for a family emergency, cancelled his remaining appointments and requested that all of his checks be sent to an address in Canada.  The next day, which was

2

approximately five days after the Government represented that it would seek an indictment, the Defendant traveled from Las Vegas, Nevada to Seattle, Washington where he purchased a one-way plane ticket to Vancouver, Canada.  The Defendant remained outside the United States until he attempted to travel to Mexico in May, 2012.  Defendant was denied entry into Mexico and was returned to the United States where he was apparently arrested on the warrant issued on the indictment.  *Id. pgs. 2-3.*

In his motion for reconsideration, Defendant's counsel states that following Defendant's decision not to accept the Government's initial plea offer in September, 2011, Defendant remained in the United States and continued working, even though the prosecutor told his counsel that "she would 'not sit on her hands' in an obtaining an indictment against Robert, but would seek a summons rather than arrest warrant." *Motion (#23), pg. 2.*  Defendant's counsel states that he informed Defendant of this statement shortly after it was made.  Defendant remained in Las Vegas for another five months even though he expected to be indicted at any time.  *Motion (#23), Declaration of Robert Forsyth, ¶2.*  Defendant acknowledges that in January, 2012, the prosecutor contacted his attorney about resolving the case and offered a plea agreement that was more severe than the previous one.  Defendant rejected the proposed plea agreement.  *Motion (#23), pg. 2.*  Defendant's motion describes his subsequent travel as follows:

> In February of 2012, Robert's long time best friend fell ill in Thailand were he was residing.  Robert, as a medical doctor felt the situation was urgent and left the country to go to assist his friend in Thailand.  Robert, a Canadian citizen with permanent resident alien status in the U.S. for most of his adult life, purchased a one-way ticket to Canada because he had no idea how long he would be gone.  He went to Vancouver first to see relatives and left the very next day for Thailand.  After two and one-half months of attending his friend, it was determined that his friend had to have a heart valve replacement operation.  They decided that it should be done in Los Angeles.  In the latter part of May, Robert flew from Thailand back to Vancouver and then decided to take a short vacation trip down to Mexico.  He did not book a return flight at that time because he didn't know how long he would stay.

*Motion (#23), pgs.2-3. See also Declaration of Robert Forsyth, ¶4.*

In support of his motion for reconsideration, Defendant states that since the detention hearing on June 18, 2012, his daughter has been able to gather together $40,000 in contributions

3

from herself and other relatives of the Defendant which they are willing to post as cash bond to secure the Defendant's pretrial release.  Defendant's daughter represents that the individuals willing to contribute to the bond know the Defendant well and have total confidence that he will not do or fail to do anything that would cause their funds to be forfeited.  *Motion (#23), Declaration of Shauna Smith.*

## DISCUSSION

The Bail Reform Act, 18 U.S.C. §3142(f)(2), provides that the detention hearing may be reopened "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  Courts have interpreted this provision strictly, holding that a detention hearing should not be reopened if the information was available at the time of the initial hearing.  *United States v. Castro-Inzunza*, 2012 WL 1952652, *3 (D.Or. 2012), citing *United States v. Ward*, 63 F.Supp.2d 1203, 1206-07 (C.D.Cal. 1999); *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); and *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989).

With the exception of the information regarding the proposed $40,000 cash bail amount that Defendant's relatives are now able to post, all of the facts set forth in Defendant's motion for reconsideration were presented, or could have been presented by Defendant during the detention hearing on June 18, 2012.

There is no new information relating to Defendant's prior conduct that materially alters the Court's previous finding that he poses a substantial risk of non-appearance.  Defendant has not refuted the Government's assertion that he fled to Canada in 2008 when he was first informed by the IRS agents that he was under criminal investigation.  Although Defendant returned to the United States approximately one month later and thereafter attempted to negotiate a resolution of the criminal charges prior to indictment, he again abruptly left the United States and went to Canada in February, 2012 after rejecting the Government's second and more severe plea offer.  Defendant's explanation that he went to Canada and then to Thailand to take care of an ailing

4

friend, and not to flee prosecution, lacks credibility.

Defendant's departure from the United States in February 2012 was consistent with his prior behavior in April 2008 when he left the country shortly after being informed of the criminal investigation. In February 2012, Defendant traveled to Seattle where he booked a one way airplane flight out of the United States. He did not provide the Government with any prior notification of his intended foreign travel, the purpose thereof, or when he expected to return to the United States. Given his previous conduct, the failure to provide any such notice and explanation supports the conclusion that he was again attempting to flee prosecution and had no intention of returning to the United States.

According to Defendant's Declaration, in May 2012 it was decided that his ill friend needed to return from Thailand to Los Angeles, California for further medical treatment. Although Defendant's friend returned to Las Vegas, the Defendant flew back to Vancouver, Canada. He then decided to take "a little vacation" to Mexico and purchased a one-way ticket to Puerto Vallarta, Mexico "because I did not know when I would be returning." *Motion (#23), Forsyth Declaration, ¶5.* It was only because he was denied entry into Mexico that Defendant ended up back in the United States. Once again, Defendant's declaration provides no credible basis for believing that he would have voluntarily returned to the United States to face the charges against him.

Defendant's foreign ties and citizenship, the financial resources available to support his travel and residency in another country, and his previous conduct in leaving the United States in the face of pending criminal charges clearly justifies the conclusion that he poses a substantial risk of non appearance. The Court also concludes that the posting of a cash bond by Defendant's relatives, or the imposition of other conditions such as home confinement and electronic monitoring are not reasonably adequate to guard against the likelihood that Defendant will again flee the United States if given the opportunity. In *United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990), the court upheld detention orders against three foreign national defendants who posed substantial risks of flight. The court stated that the wearing of an electronic monitoring device does not offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction. *See also United States v. Anderson*, 384 F.Supp.2d 32, 41 (D.D.C. 2005) and

5

*United States v. Gonzalez*, 2012 WL 843728, *12 (D.N.M. 2012) (holding that such measures do not provide adequate security against flight to a foreign country where the defendant has both the motive and the means to do so).  In *United States v. Giordano*, 370 F.Supp.2d 1256, 1264 (S.D.Fla. 2005), the court also indicated that the offer to post a substantial cash bond may not provide adequate security against the risk of flight where the defendant has a strong motive to flee, has access to significant funds, and there is evidence of strong foreign family or business ties.

## CONCLUSION

Defendant has not presented new information that justifies the reopening of the detention hearing.  Furthermore, Defendant's additional explanations for his departure from the United States in February, 2012 and the offer by his relatives to post cash bond to secure his release, are not sufficient to cause the Court to reverse its previous determination that Defendant poses a substantial risk of nonappearance and that there is no condition or combination of conditions that can be fashioned to reasonably assure his future appearance.  Accordingly,

**IT IS HEREBY ORDERED** that Defendant Robert Forsyth's Motion for Reconsideration of Pretrial Detention Order; Request for Release Pending Trial (#23) is **denied**

DATED this 7th day of August, 2012.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge

6